UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL D. MARKHAM,

                                Plaintiff,          Case # 20-cv-6039-FPG

v.                                                              DECISION AND ORDER

MATTHEW A. ROSENBAUM,[1] et al.,

                                Defendants.
_____

## INTRODUCTION

On January 17, 2020, *pro se* Plaintiff Michael Markham commenced this action pursuant to 42 U.S.C. § 1983[2] against New York State Supreme Court Justice Matthew A. Rosenbaum, Acting Supreme Court Justice Richard A. Dollinger, Monroe County Clerk Adam J. Bello, Plaintiff's ex-wife Diane R. DeLong, her former attorneys Timothy E. Ingersoll, Marueen A. Pineau, and Jennifer Speller, Plaintiff's former attorneys Sharon Kelly Sayers and Gregory J. Mott, court referee Cynthia L. Snodgrass, and court-assigned psychologist David Coron (collectively, "Defendants") for various due process violations arising out of his lengthy and contentious divorce and custody litigation.[3]  ECF No. 1.

Before the Court are Defendants' motions to dismiss, ECF Nos. 5, 11, 12, 14, 16, 18, 21, 33, and Plaintiff's motions for miscellaneous relief, ECF Nos. 31, 34, 50.

---

[1] Incorrectly sued as Mathew A. Rosenbaum.

[2] Plaintiff also purported to bring claims under 18 U.S.C. § 241 and 18 U.S.C. § 242, which are are criminal statutes. Because there is no private right of action for either statute, *Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006), those claims are dismissed.

[3] Plaintiff brought a similar action against other individuals related to his divorce proceedings in December 2019. Case No. 19-cv-6930.  That case is also pending before the Court.

1

**BACKGROUND**

Plaintiff's amended complaint does not contain a cogent recitation of the facts giving rise to his legal claims. Instead, he attaches over 100 pages of exhibits to fill in the blanks. The facts described below are derived from those exhibits.

The exhibits reveal that Plaintiff and DeLong were involved in divorce proceedings before New York Supreme Court Justice Kenneth Fisher beginning in 2015.[4] Plaintiff alleges that during those proceedings, Justice Fisher and other individuals involved with the case fabricated a hearing and trial that never occurred. *See* ECF No. 30 at 42, 80 (in which Plaintiff's outgoing attorney Mott indicates to incoming attorney Sayers that "Fisher says he held a Lincoln Hearing. He refers to 'Mother's testimony, but there is no transcript in existence and no reference to a default hearing or notice of default hearing. In talking to [Bezinque] he admitted that there was no hearing"). During these proceedings and in response to a custody dispute, Plaintiff apparently requested that Dr. Coron conduct a forensic custodial evaluation but Plaintiff did not retain Dr. Coron and the evaluation did not occur. *Id.* at 85.

On December 20, 2016, following Plaintiff's default, Justice Fisher issued a decision and order granting divorce and awarding custody. *Id.* at 115-32. In September 2017, the case was transferred to the late Justice Elma A. Bellini, who vacated that judgment of divorce. *Id.* at 71.

The matter was then transferred to Justice Dollinger. Plaintiff, represented by Attorney Mott,[5] made an application to vacate the previous proceedings. On October 31, 2017, despite that the judgment had been vacated by Justice Bellini, Justice Dollinger granted the application to

---

[4] According to Plaintiff, after he fired his own attorney, Justice Fisher precluded Plaintiff "from offering any proof on any disputed issue of fact" with "full knowledge that [Plaintiff] was now without representation." *Id.* at 62. The exhibits Plaintiff attaches to the amended complaint also indicate that Justice Fisher jailed Plaintiff for contempt. *Id.*

[5] Sayers later assumed Plaintiff's representation. *See* ECF No. 30 at 79.

vacate the previously-granted divorce and appointed Lisa Morris, Esq. as attorney for the children. *Id.* at 53-55.  At the time, Attorney Ingersoll represented DeLong, Plaintiff's ex-wife.

On September 16, 2018, Plaintiff asked Justice Rosenbaum to remove Justice Dollinger from presiding over Plaintiff's divorce proceedings, arguing that an "overwhelming conflict of interest" existed due to "the Dollinger family's decades long relationship with [DeLong]." *Id.* at 46.  Two days later, Plaintiff wrote to Justice Dollinger, seeking his recusal because DeLong is a "decades long friend of your brother Andrew and is a lifelong friend of your sister-in-law Virginia Blackwell," and because Plaintiff and DeLong had been the overnight guest at the home of Justice Dollinger's mother. *Id.* at 49.  Plaintiff also indicated that DeLong had contacted Justice Dollinger before regarding a dispute when Justice Dollinger was a town court judge. *Id.*  According to the amended complaint, Justice Dollinger declined to recuse himself. *Id.* at 37-38.

In a letter dated September 21, 2018, Justice Rosenbaum explained to Plaintiff that he did not have authority to remove Justice Dollinger from the case and suggested that, if Plaintiff felt there was a conflict of interest, he should seek recusal directly from Justice Dollinger. *Id.* at 47.

At Plaintiff's request, Justice Dollinger set a show cause hearing for the end of October 2018.  Plaintiff sought the disqualification of the new attorney for the child, Edward Riley and Plaintiff's own attorneys, Mott and Sayers, and again requested the recusal of Justice Dollinger. *Id.* at 50-51.

Plaintiff reported the alleged misconduct of Justices Fisher, Dollinger, and Rosenbaum and many of the attorneys involved in the divorce proceedings—including DeLong's first attorney Mark Bezinque—numerous times to state and federal agencies. *Id.* at 57-66.  While these agencies acknowledged the complaints, they do not appear to have taken any action.

Prior to trial in December 2018, Plaintiff, then proceeding *pro se*, and DeLong, represented by Attorney Pineau, together with the children's attorney, Riley, reached a settlement in open court resolving the issues between them. *Id.* at 71. On April 3, 2019, Justice Dollinger issued a "Judgment of Absolute Divorce," which incorporated the parties' stipulated terms and which was filed with the Monroe County Clerk. ECF No. 30 at 68-77.

Plaintiff filed his complaint on January 17, 2020. ECF No. 1. On March 9, 2020, Plaintiff filed an amended complaint, which is the same as the original complaint in all respects except for the removal of his request for "injunctive relief in the form of referral for criminal prosecution and parental rights." ECF No. 30 at 1. Plaintiff now seeks monetary damages in the amount of $12 million. *Id.* at 7. Although Plaintiff's time to amend the complaint as of right expired with respect to some Defendants, Fed. R. Civ. P. 15, because the complaint and amended complaint are virtually identical and because no Defendant has made any claim to the contrary, ECF No. 32, the Court will accept the amended complaint as the operative pleading.

Plaintiff asserts that Defendants "fabricat[ed] evidence including Lincoln Hearings and an entire Trial that the facts show never actually occurred," and that some Defendants "actively and knowingly conspired to cover up these crimes to protect their legal colleagues and associates and willfully deprived the Plaintiff" of due process. ECF No. 30 at 36. According to Plaintiff, Defendants conspired to falsely claim that New York courts had jurisdiction over the custody disputes, despite the fact that Plaintiff's minor children had lived in Hawaii—not New York—"in the years immediately preceding the commencement of divorce litigation in New York State." *Id.*

Before Plaintiff filed his amended complaint, Defendants, represented by various counsel, moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

4

Procedure.[6]  ECF Nos. 5, 11, 12, 14, 16, 18, 21, 33.  Having accepted the amended complaint as the operative pleading, the Court will analyze these motions to dismiss in light of the amended complaint.  The Court will then address Plaintiff's motions for miscellaneous relief.  ECF Nos. 31, 34, 50.

## LEGAL STANDARD

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Bryant v. Roosa*, No. 15-CV-440-FPG, 2016 WL 320990, at *2 (W.D.N.Y. Jan. 25, 2016) (quoting another source).  A claim "is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).  In resolving such a motion, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting another source).  The Court may refer to evidence outside of the pleadings in determining a Rule 12(b)(1) motion.  *Rojas v. Roman Catholic Diocese of Rochester*, 557 F. Supp. 2d 387, 393 (W.D.N.Y. 2008).

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting another source), and "draw all reasonable inferences in Plaintiff's favor."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  To survive a

---

[6] This case has been the subject of extensive litigation.  On February 6, 2020, the Court denied Plaintiff's motion to proceed *in forma pauperis*, ECF No. 2, and Plaintiff's motion to appoint counsel, ECF No. 3.  ECF No. 6.  The Court denied Plaintiff's motion for a preliminary injunction against some Defendants, ECF No. 9, on February 18, 2020.  ECF No. 17.  Plaintiff sought entry of default against DeLong, ECF Nos. 24, 25, and against Justice Dollinger, ECF No. 29.  The Clerk of Court declined to enter default.  Plaintiff also requested a change in venue, ECF No. 44, which the Court also denied, ECF No. 47.

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

## DISCUSSION

### I. Motions to Dismiss

Defendants argue that the amended complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Because the Court is required to address whether it has subject matter before proceeding to the merits, the Court addresses the Rule 12(b)(1) arguments first.

### A. Motions to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)[7]

Defendants advance a number of jurisdictional arguments to support their contention that the claims against them should be dismissed under Rule 12(b)(1). They argue that the Court does not have subject matter jurisdiction over Plaintiff's claims under (1) the *Rooker-Feldman* doctrine, (2) the domestic relations exception, and (3) *Younger* abstention.

First, Defendants suggest that the claims against them are precluded by the *Rooker-Feldman* doctrine, which bars cases brought by losing parties in state court actions complaining of injuries caused by state court judgments. *Wik v. City of Rochester*, 632 F. App'x 661, 662 (2d Cir. 2015) (summary order). The Court agrees in part and disagrees in part.

The *Rooker-Feldman* doctrine precludes a district court from adjudicating "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "If the injury alleged resulted from the state court judgment itself, the *Rooker-Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional." *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 702 (7th Cir. 1998) (footnotes and citations omitted); *see also id.* at 703 ("Injury due to a state court decision remains the essential touchstone in determining the applicability of the *Rooker-Feldman* doctrine.").

Based on *Exxon Mobil*, the Second Circuit distilled four requirements for the application of the *Rooker-Feldman* doctrine, two of which may be described as procedural and two which may

---

[7] At the outset, the Court notes that despite Plaintiff's assertion that the Court has jurisdiction over this case under both federal question and diversity jurisdiction, only federal question applies because Plaintiff's claims appear to arise exclusively out of alleged federal constitutional violations under 42 U.S.C. § 1983.

be deemed substantive. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* (citation, footnote, internal quotation marks and brackets omitted).

Here, the first and fourth elements are met but the second and third are a closer call. With respect to the first element, Plaintiff lost in state court when Justice Dollinger issued a Judgment of Divorce against him, even though it was the product of a stipulation. *Wittich v. Wittich*, No. 06CV1635(JFB)(WDW), 2006 WL 3437407, at *3 (E.D.N.Y. Nov. 29, 2006) (deeming the plaintiff a losing party where he sought to overturn a settlement on the basis that it violated his rights). With respect to the fourth element, the state court judgment was entered months before Plaintiff filed this lawsuit.

It is unclear, however, that Plaintiff's injuries were *caused* by the state court judgment. To be sure, Plaintiff challenges conduct that occurred during the state court proceedings and the challenged conduct may have contributed to or culminated in the state court judgment. But it is not clear that Plaintiff has invited the district court to review and reject the state court judgment itself. Initially, Plaintiff's complaint sought injunctive relief vacating the judgment of divorce. Defendants moved to dismiss based on that complaint. Without question, such relief would have required the Court to review and reject the state court's conclusions. In response to Defendants' motions, however, Plaintiff removed his request for injunctive relief, leaving only his request for money damages for alleged constitutional violations, such as conspiring to conceal certain allegedly fabricated divorce proceedings. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 515

(E.D.N.Y. 2010) (holding that Second Circuit precedent "suggest[s] that a plaintiff's claims seeking only monetary damages or prospective-only relief against court procedures rather than modification of a family court's temporary custody or other orders would not run afoul of the *Rooker-Feldman* doctrine"); *Dowlah v. Dowlah,* No. 09 Civ. 2020, 2010 WL 889292, at *2 (E.D.N.Y. Mar. 10, 2010) (same). He avers that his claims are not matrimonial in nature; they are based solely on "a deprivation of his Constitutional rights alone." ECF No. 31 at 6. While evaluating these allegations may require examination of events that occurred during the proceedings, it is not clear that the Court here would necessarily be required to review and reject the state court judgment itself. *See McKnight,* 699 F. Supp. 2d at 515 ("The doctrine only applies where the requested federal court remedy of an alleged injury caused by a state court judgment would require overturning or modifying that state court judgment." (internal quotation marks omitted)).

Therefore, it does not appear that the *Rooker-Feldman* doctrine bars all of Plaintiff's claims. Still, the amended complaint does seem to challenge Justice Dollinger's failure to recuse himself and his use of previous orders "as a substantive basis for all of his rulings going forward," ECF No. 30 at 38, as well as an order exerting jurisdiction over Plaintiff and the children, *id.* at 43. To the extent Plaintiff asks the Court to review and reject any previous state court judgment, the *Rooker-Feldman* doctrine would indeed divest the Court of subject matter jurisdiction.

Second, Defendants argue that the domestic relations exception divests the Court of subject matter jurisdiction because this case involves divorce and child custody disputes that were the subject of state court litigation. *See* ECF No. 12-2 at 4-5. The Court disagrees.

The Second Circuit has held that the domestic relations exception only applies to cases whose basis for jurisdiction is diversity, not federal question. *Deem v. DiMella-Deem*, 941 F.3d

618, 623 (2d Cir. 2019) ("[T]he domestic relations exception clearly does not apply to this case because it is before this Court on federal question jurisdiction, not diversity." (quoting another source)).  Because this case is premised on a federal question arising out of 42 U.S.C. § 1983, the domestic relations *exception* does not divest the Court of subject matter jurisdiction.

However, in *Deem*, the Second Circuit went on to conclude that the domestic relations *abstention* doctrine may allow a federal court to decline to exercise subject matter jurisdiction over claims that are "on the verge of being matrimonial in nature" where "there is no obstacle to their full and fair determination in state courts."  941 F.3d at 623 (quoting *American Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990)).  Because, as explained below, the Court concludes that Plaintiff's amended complaint has failed to state a claim, it will not reach whether it should abstain from exercising subject matter jurisdiction due to the domestic relations abstention doctrine.

Third, some Defendants argue that the Court should abstain under *Younger v. Harris*, 410 U.S. 37 (1971), which "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).  The Court acknowledges that, in his motion for a preliminary injunction, ECF No. 9 at 1, Plaintiff indicated that some litigation was ongoing in Family Court or New York Supreme Court.  Although it appears that such litigation *may* be related to the pending proceeding—especially since it appears to involve many of the same people—the Court is not persuaded based on the pleadings that exercising jurisdiction over this case would necessarily call into question ongoing state proceedings.  However, to the extent any of Plaintiff's claims in this case *do* bear on an ongoing state proceeding, the Court will abstain from hearing them.

For these reasons, the Defendants' motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) are GRANTED to the extent the amended complaint (1) bears on an ongoing state proceeding and (2) requires the Court to review and reject a state court judgment. In all other respects, Defendants' motions to dismiss for lack of subject matter jurisdiction are DENIED.

### B. Motions to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

Defendants also move to dismiss the claims against them for failure to state a claim pursuant to Rule 12(b)(6). The allegations against Defendants are similar, but because they differ slightly, the Court will address each Defendant separately. However, the Court concludes that the claims against each Defendant should be dismissed.

#### i. Timothy E. Ingersoll (ECF No. 5)

Plaintiff alleges that Ingersoll—Plaintiff's ex-wife's second attorney—conspired to deprive Plaintiff of due process by, among other things, conspiring to conceal the fabricated trial and hearings and "hid[ing] the crimes his legal colleagues committed under the Kenneth Fisher Court." ECF No. 30 at 38.

To support a federal claim for deprivation of a constitutional right under 42 U.S.C. § 1983, "the conduct at issue must have been committed by a person acting under color of state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). A private person is generally not considered a state actor unless: (1) "the entity acts pursuant to the coercive power of the state or is controlled by the state"; (2) the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies"; or (3) "the entity has been delegated a public function by the state." *Justice v. King*, No. 08-CV-6417-FPG, 2015 WL 1433303, at *15 (W.D.N.Y. Mar. 27, 2015), *aff'd*, 628 F. App'x 58 (2d Cir. 2016).

Here, however, Ingersoll is *not* a state actor. *Agron v. Douglas W. Dunham, Esq & Assocs.*, No. 02 CIV. 10071 (LAP), 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004) ("It is well-established that as a matter of law a private attorney is not a state actor."). Plaintiff does not set forth any argument that Ingersoll should be converted into one using the three tests described above. Rather, Plaintiff argues that Ingersoll conspired with state actors to deprive him of his constitutional rights.

"[T]o demonstrate that a private party defendant was a state actor engaged in a conspiracy with other state actors under § 1983, a plaintiff must allege (1) an agreement between the private party and state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 197 (E.D.N.Y. 2010). "A plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, . . . but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see Young*, 705 F. Supp. 2d at 197 ("Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.").

Plaintiff's allegations are vague and conclusory. Far from including any facts regarding Ingersoll's personal involvement in any conspiracy, Plaintiff merely alleges that Ingersoll "conspired to keep" quiet that a trial and facts had been fabricated. That is not enough to survive a motion to dismiss. *See Robbins v. Cloutier*, 121 F. App'x 423, 425 (2d Cir. 2005) (dismissing a § 1983 conspiracy claim as insufficient where plaintiff merely alleged that defendants "acted in a

concerted effort" to agree not to hire plaintiff and to inform others not to hire plaintiff). Nor has Plaintiff established any overt act on the part of Ingersoll to give rise to § 1983 liability.

Ingersoll's motion to dismiss for failure to state a claim, ECF No. 5, is therefore GRANTED.

### ii. Maureen Pineau (ECF No. 11)

Plaintiff alleges that Pineau, DeLong's third attorney, "conspired to hide the crimes of the Fisher Court including the fabricated trial, the falsified hearings, and the destroyed records and thereby willfully and effectively deprived the Plaintiff of his Constitutional right to due process." ECF No. 30 at 38. He indicates that Pineau attempted to defraud him and the state court "with her numerous false affirmations and submissions" to Justice Dollinger, including fraudulently conveying the terms of the parties' agreement, and conspired with Defendants to compel Justice Dollinger to issue a "Personal Jurisdiction order against Plaintiff." *Id.* at 39.

Like with respect to Ingersoll, Plaintiff has not met the factors required for treating the allegations against Pineau as those against a state actor or a private actor in a conspiracy with a state actor. Plaintiff's allegations are vague and conclusory and he fails to set forth any agreement or any overt, concerted acts to deprive him of his constitutional rights. Therefore, Pineau's motion to dismiss, ECF No. 11, is GRANTED.

### iii. Matthew A. Rosenbaum (ECF No. 12)

Plaintiff claims that former Justice Rosenbaum knew of the alleged falsified hearings and trial but, as supervising judge, "still refused to do anything to ensure the integrity of the Court and the preservation of its records." ECF No. 30 at 37. He also alleges that Justice Rosenbaum's "willful participation in the conspiracy to falsify a trial and through his attempts to ignore and

cover up the destruction of all of the Plaintiff's Court records has deprived the Plaintiff of his rights." *Id.*

Plaintiff's claims against Justice Rosenbaum must be dismissed because Justice Rosenbaum is entitled to absolute judicial immunity. Courts have routinely found state court judges immune from suit for similar conduct involving divorce and custody-related hearings and issues. *See Leathersich v. Cohen*, No. 18-CV-6363, 2018 WL 3537073, at *2 (W.D.N.Y. July 23, 2018) (concluding that monetary and injunctive relief was not available against state court judge overseeing divorce proceedings because judge's acts were "all quintessential judicial functions that, even where performed incompetently or for improper purposes, cannot form the basis of a suit against the judicial officer"), *appeal dismissed*, No. 18-2600, 2019 WL 994360 (2d Cir. Jan. 30, 2019); *see also Anthony Pappas for Cong. v. Lorintz*, No. CV184199JSAKT, 2019 WL 4396589, at *13 (E.D.N.Y. Aug. 2, 2019) ("As an initial matter, [plaintiff] cannot raise a viable claim against [the divorce judge] because as a judicial officer, [he] is shielded from suit by absolute judicial immunity."), *Report and Recommendation adopted sub nom.* 2019 WL 4396761 (E.D.N.Y. Aug. 26, 2019).

"Absolute judicial immunity is not overcome by allegations of bad faith or malice, nor can a judge "be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Renner v. Stanton*, No. 13-CV-01676 DLI, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (quoting another source). Rather, "[j]udicial immunity may be overcome only if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were in the complete absence of all jurisdiction." *Id.*

Plaintiff makes no such claim here. Instead, Plaintiff challenges judicial decisions or inaction by Justice Rosenbaum in his role as supervising judge.[8] His allegations against Justice Rosenbaum are therefore barred by absolute judicial immunity. *See Levine v. Lawrence*, No. 03-CV-1694, 2005 WL 1412143, at *5 (E.D.N.Y. June 15, 2005) (neither claims that a judge's decision was "biased and prejudicial" nor that proceedings were conducted "in an irregular or erroneous manner" abrogates absolute immunity). Justice Rosenbaum's motion to dismiss, ECF No. 12, is therefore GRANTED.

### iv. Cynthia L. Snodgrass (ECF No. 12)

Plaintiff alleges that Snodgrass, a court-appointed referee, refused to remove Riley as the attorney for Plaintiff's children, despite Plaintiff's claims to Snodgrass that Riley was "heavily conflicted." ECF No. 30 at 40.

Plaintiff's claims against Snodgrass must be dismissed for the same reasons the claims against Justice Rosenbaum must be dismissed. Snodgrass's failure or refusal to reassign Riley as attorney for the children was an act or omission firmly within her purview as a court appointed referee. *Renner*, 2013 WL 1898389, at *3 ("Furthermore, a court appointed referee is similarly entitled to absolute immunity for her official acts."); *Wilson v. Wilson–Polson*, 446 F. App'x 330, 331 (2d Cir. 2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit).

Snodgrass's motion to dismiss, ECF No. 12, is GRANTED.

### v. Gregory J. Mott (ECF No. 14)

Plaintiff alleges that his second attorney, Mott, "knowingly and willfully conspired with the other defendants to deprive Plaintiff to his Constitutional right to due process" by refusing to

---

[8] It is unclear whether Justice Rosenbaum ever had any authority to act on or remedy Plaintiff's grievances.

15

act on his client's behalf despite knowing that "the trial was fabricated, the hearings falsified, and the records were destroyed." ECF No. 30 at 39.

Mott's motion to dismiss must be granted for the same reasons articulated above with respect to Ingersoll and Pineau, *i.e.*, that Plaintiff fails to allege that Mott was a state actor or that his actions alone or in concert with others convert him into a state actor for purposes of 42 U.S.C. § 1983.

### vi. David Coron (ECF No. 16)

Plaintiff alleges that Dr. Coron, a court-appointed psychologist, issued a parental evaluation portraying Plaintiff in a negative light and conspired with the court to conceal that the trial and hearings never happened. ECF No. 30 at 41.

Plaintiff fails to state a claim against Dr. Coron for the same reason he failed to state a claim against Ingersoll, Pineau, and Mott: Dr. Coron is not a state actor and the pleadings do not permit the Court to infer that he is. Plaintiff's claims that Dr. Coron participated in a conspiracy to deprive him of his constitutional rights are vague and entirely conclusory. Therefore, Dr. Coron's motion to dismiss, ECF No. 16, is GRANTED.

### vii. Sharon Kelly Sayers (ECF No. 18)

Plaintiff alleges that his third attorney, Sayers, was a close personal friend of Lisa Morris, the first attorney for the children, and, like the other Defendants, "knowingly and willfully conspired" to deprive Plaintiff of his rights and cover up the "fabricated trial." ECF No. 30 at 40.

Sayers, too, is a private actor. *See Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 F. App'x 500 (2d Cir. 2012) ("[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent."). Plaintiff's claim that Sayers

participated in a conspiracy to deprive him of his constitutional rights is vague and entirely conclusory. For the same reasons stated above with respect to the other Defendants, Sayers's motion to dismiss, ECF No. 18, is GRANTED.

### viii. Jennifer Speller (ECF No. 18)

Plaintiff alleges that Speller, one of DeLong's former attorneys, "conspired to fabricate a trial, falsify the existence of Lincoln Hearings and cover up the destruction of court records to hide these crimes." ECF No. 30 at 42.

Plaintiff has not set forth any allegations that give rise to Speller's liability under 42 U.S.C. § 1983. Again, Plaintiff's claim that Speller participated in a conspiracy to deprive him of his constitutional rights is vague and conclusory. Speller's motion to dismiss, ECF No. 18, is GRANTED.

### ix. Adam J. Bello (ECF No. 33)

Plaintiff alleges that Bello, who was county clerk at the time, "attempted to cover up the crimes of officers of the court" and "further refused to act when notified of all the missing records and conspired in the cover up that followed." ECF No. 30 at 38.

Bello initially filed an answer rather than a motion to dismiss. *See* ECF No. 15. However, Bello timely filed a motion to dismiss the amended complaint, which the Court accepts as the operative pleading. He argues that the amended complaint should be dismissed as to him because it does not name him as a defendant, does not set forth a clear and precise constitutional violation, and alleges no personal involvement on the part of Bello. ECF No. 33-2 at 2-4.

Bello is named in the amended complaint, and the amended complaint does indicate that Bello refused to remedy the loss of missing documents and helped to cover them up. *See* ECF No. 30 at 38. Yet it is not clear what the constitutional violation is and how it injured Plaintiff. The

17

amended complaint therefore fails to allege any specific unconstitutional acts taken by Bello giving rise to liability under 42 U.S.C. § 1983. Bello's motion to dismiss, ECF No. 33, is therefore GRANTED.

### x.     Richard A. Dollinger (ECF Nos. 12, 28)

Plaintiff complains of a number of acts and omissions by Justice Dollinger. He alleges that Justice Dollinger illegally signed an order to vacate when Justice Bellini refused to sign it, barred Plaintiff from the courtroom, refused to recuse himself despite being a "lifelong family friend of the Plaintiff's ex-wife," and refused to "vitiate or even acknowledge the crimes of the Fisher Court," all while using those "crimes" "as a substantive basis for all of his rulings going forward." ECF No. 30 at 27-28. He also claims that Justice Dollinger refused to order additional parental evaluations, never allowed Plaintiff to see the parental evaluation, and sealed the file to hide his collusion. ECF No. 30 at 41-42.

First, Justice Dollinger had not been served at the time Snodgrass and Justice Rosenbaum filed their motions to dismiss. However, the motion papers indicated that "[i]t is believed that once served[,] the Attorney General's Office would represent Supreme Court Justice Dollinger. Therefore, in the interest of judicial economy, this motion also includes arguments related to the Judge Dollinger [sic]." ECF No. 12-2 at 1. Justice Dollinger has since been served and the Attorney General's Office has again renewed its request that the arguments advanced in support of the motions to dismiss from the other judicial defendants be applied to Justice Dollinger.

Although, as discussed above, it is difficult to parse Plaintiff's allegations, to the extent he seeks to attack a state court judgment issued by Justice Dollinger, those claims are barred by the *Rooker-Feldman* doctrine. Even if they were not, and to the extent Plaintiff does not attack any such judgment, his claims must still be dismissed because, like Snodgrass and Justice Rosenbaum,

Justice Dollinger is absolutely immune. Plaintiff does not allege that Justice Dollinger took any "nonjudicial actions" or any judicial actions "in the complete absence of all jurisdiction." *See Renner*, 2013 WL 1898389, at *3 (quoting another source). Justice Dollinger's motion to dismiss, ECF Nos. 12, 28, is therefore GRANTED.

### xi. Diane DeLong (ECF No. 21)

Plaintiff alleges that his ex-wife, DeLong admitted "to conspiring with Mark Bezinque and Jennifer Speller to illegally seizing by secret wire transfer the Plaintiff's bank assets . . . and then proceeded to divide them up in Mark Bezinque and Jennifer Speller's law office." ECF No. 30 at 42. He further claims that DeLong "conspired with Mark Bezinque and Jennifer Speller to defraud the Court about the Hawaii residency of the children prior to the commencement of the divorce proceedings." *Id.* at 43.

As explained above, the Court will not entertain relitigating previous state court rulings. To the extent these allegations against DeLong do not require such review, they must be dismissed because DeLong is not a state actor and Plaintiff does not allege that DeLong entered into an agreement with a state actor or took overt and concerted steps to carry out the conspiracy. Plaintiff's claims are vague and conclusory. DeLong's letter request to dismiss, ECF No. 21, joining the arguments advanced by other Defendants, is therefore GRANTED.

## II. Motions for Miscellaneous Relief

### A. Plaintiff's Motion to Deny Motions to Dismiss (ECF No. 31)

As explained above, the Court grants Defendants' motions to dismiss. Therefore, Plaintiff's request that Court deny the motions to dismiss, ECF No. 31, is DENIED AS MOOT.

### B. Plaintiff's Motion for Summary Judgment Against Adam Bello (ECF No. 34)

Plaintiff argues that summary judgment against Bello in Plaintiff's favor is appropriate because Bello failed to timely file a motion to dismiss. As explained above, Bello timely moved to dismiss the amended complaint, which the Court accepts as the operative pleading. Because the Court dismisses the claims against Bello, Plaintiff's motion for summary judgment, ECF No. 34, is DENIED AS MOOT.

### C. Plaintiff's Motion to Deny Requested Orders (ECF No. 50)

Again, Plaintiff confusingly moves to deny some Defendants' motions to dismiss. Because the Court grants those motions, Plaintiff's motion, ECF No. 50, is DENIED AS MOOT.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, ECF Nos. 5, 11, 12, 14, 16, 18, 21, 33, are GRANTED to the extent the amended complaint (1) bears on an ongoing state proceeding and (2) requires the Court to review and reject a state court judgment and DENIED in all other respects.

Defendants' motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, ECF Nos. 5, 11, 12, 14, 16, 18, 21, 33, are GRANTED. Plaintiff's motions for miscellaneous relief, ECF Nos. 31, 34, 50, are DENIED AS MOOT.

Because Plaintiff already amended the complaint in response to all but one of Defendants' motions to dismiss, the Court declines to provide Plaintiff with another opportunity to amend. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 18, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court